(C. D. 1710)

FRIEDMAN MIRROR & GLASS CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 23, 1955)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil*, trial attorney), for the defendant.

Before Oliver, Mollison, and Wilson, Judges

Wilson, Judge: The merchandise involved in this case consists of sets of polished plate-glass strips, with 17 pieces in each set. Most of the strips are silvered. The collector dealt with the pieces of glass as individual items and assessed them with duty under paragraph 218 (f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by the President's proclamation in T. D. 51898.

Paragraph 218 (f) of the tariff act, as modified, *supra*, under which the involved merchandise was classified, provides as follows:

* * * and all articles of every description not specially provided for, composed wholly or in chief value of glass * * * colored, cut, engraved, etched * * * silvered, stained, or decorated or ornamented in any manner * * *:

    Other_____ 50¢ on each article or utensil, but not less than 30% nor more than 50% ad val.

The importer admits that the importation is properly classifiable under the provisions of paragraph 218 (f) of the tariff act, *supra*, but asserts that the merchandise comes under that part of the paragraph modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52373, supplemented by Presidential proclamation, T. D. 52462, at the rate of 15 per centum ad valorem. The pertinent parts of the paragraph, as modified, which plaintiff claims to be applicable, read as follows:

* * * and all articles of every description not specially provided for, composed wholly or in chief value of glass, * * * :

    · Articles primarily designed for ornamental purposes, decorated chiefly by engraving, and valued at not less than $8 each * * *

Alternatively, the plaintiff claims the goods to be dutiable under paragraph 230 (d) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, supplementing T. D. 51802, which provides for:

All glass, and manufactures of glass, or of which glass is the component of chief value, not specially provided for ( * * * )

at the rate of 25 per centum ad valorem.

The plaintiff takes the position that each set of 17 pieces of glass constitutes an entirety, specifically designed and manufactured for

use as a mirror frame, and, furthermore, that the glass pieces are decorated chiefly by engraving. On the other hand, the Government contends that the 17 pieces of glass in question do not constitute an entirety and are not dedicated to a specific purpose or use; that each individual piece of glass, considered separately, is of a value less than $8; and that the glass is not decorated by engraving. If the Government's contention that these individual pieces of glass do not constitute an entirety is sustained, then plaintiff's claim under paragraph 218 (f), as amended, *supra*, cannot be upheld, because the individual pieces of glass, considered separately, do not come within the value limitation of the paragraph.

Joseph Friedman, president of the plaintiff company, whose business is that of assembling mirrors from parts and making up mirrors and mirrored furniture (R. 8), and Arthur S. Langlotz, a representative of Langlotz & Co., agent and sales representative for several large glass companies in the United States and abroad (R. 53), testified for the plaintiff.

Mr. Friedman stated that his company did glass engraving (R. 9); that he had had 5 years' actual experience as an engraver (R. 33–34); that he had been engaged in the glass business for 20 years (R. 10); and that he was familiar with the merchandise here in question (R. 11 and 14).

Mr. Friedman produced an S-shaped piece of plate glass (plaintiff's illustrative exhibit 1), beveled all around the edges and decorated by engraving in the back. This engraving shows through on the front surface. The exhibit was silvered. The witness stated that this exhibit is the same as all the other S-shaped items described in item 1 on the invoice in this case (R. 12–16). Plaintiff's illustrative exhibit 2 (R. 20) is a photograph, showing 1 set of the 17 pieces of plate glass assembled as a frame around a mirror. Plaintiff's illustrative exhibit 3 was identified by the witness as being representative of the merchandise covered by item 2 on the invoice. This exhibit is a piece of plate glass, which is beveled, silvered, and decorated with circular figures or ponties. It is a sample of the piece of glass fitting into the mirror frame at the center and top. Plaintiff's illustrative exhibit 4 (R. 24) is a C-shaped piece of plate glass, with a beveled edge, unsilvered. Plaintiff's witness stated that this exhibit is identical with the pieces described under item 4 on the invoice (R. 24–27).

Mr. Friedman testified that the only use to which the 17-piece sets could be put was to form a frame for a mirror of a definite size and shape (R. 17–18 and 28). He also testified that the 17 pieces, which are dedicated for use as a mirror frame, are engraved; that beveling constitutes engraving; and that all the 17 pieces are beveled around the edge (R. 32–37). The witness stated that there

is no other type of decoration on illustrative exhibits 1, 3, and 4, except engraving (R. 38).

It was stipulated between the plaintiff and the United States that, if the court finds that the 17 pieces constitute an entirety, the value of each set is over $8 (R. 38–39).

On cross-examination, the witness Friedman testified that all of the beveling on plaintiff's illustrative exhibit 4 was done prior to its importation and then described the manner in which beveling and other grinding and finishing work is performed on glass (R. 39–44). He further stated that he could see no difference in the end result, whether engraving is done with a copper wheel or a stone wheel (R. 45). The witness explained the manner in which the complete mirror, of which the 17 pieces of plate glass here involved constitute the frame, is assembled. He stated that the mirror is cemented to a wooden back and that there is an edge of wood. "They [the pieces constituting the frame] are cemented on to the wood and then they catch the glass, catch the glass to hold it—catch the bottom of the mirror" (R. 47).

With reference to the use made of the 17 pieces of plate glass now under consideration, the witness testified on cross-examination as follows:

X Q. Yes. Now, do you always use the 17 pieces in making the mirror?—A. Yes, sir.

X Q. Do you ever make mirrors which require less than 17 pieces?—A. Well, we have different photographs here that we make those mirrors that have 22—here's a 22.

X Q. And those 22 pieces are selected from the 17 and others are added?—A. No, sir. These are different sizes. In fact, you can see it from the photograph.

X Q. Do you ever manufacture smaller mirrors and use some of the 17 instead of the entire 17?—A. We make other designs and we lay out the sizes according to the designs and we order those as sets, complete sets.

X Q. I didn't ask you how you ordered them as complete sets, I asked you how do you use them?—A. As complete sets; that's the way we use them.

X Q. You always use the 17 pieces?—A. Seventeen in this case. In the case of this here imported parts we use the 17.

\* \* \* \* \* \* \*

X Q. Do you always use the 17 pieces on a mirror 44 x 60?—A. Yes, sir.

X Q. Do you ever use it on a mirror 38 x 50?—A. Fifty-one, that's a different set.

X Q. Do you ever use it?—A. Yes, sir.

X Q. On a mirror 38 x 50?—A. We were using it years ago. We don't make that mirror anymore.

X Q. But you did use it?—A. Yes.

X Q. Did you use the same set on the mirror 38 x 50 as you did on the mirror 44 x 60?—A. Impossible, because you have different sizes. How could you get out a 44 x 60 of the same 17 pieces with the same thing, using the same 17 pieces? (R. 48–50.)

The witness was further asked on cross-examination:

X Q. Do you always use the same 17 pieces in the 48 x 60 mirror or do you use, occasionally, a different top piece or some different ones of another set?—A. We always use the same.

X Q. No, you don't understand my question.—A. The same 17 pieces?

X Q. Yes.—A. We always use the same 17 pieces exactly because these are photographs from what we sell all over the country. (R. 50–51.)

In response to certain questions propounded by Judge Mollison, the witness testified as follows:

JUDGE MOLLISON: Look at Plaintiff's Exhibit 1. Do you ever use that exhibit or an article like Plaintiff's Exhibit 1 by itself?

THE WITNESS: No, sir.

JUDGE MOLLISON: Do you ever manufacture anything wholly with Exhibit 1?

THE WITNESS: I don't understand that. You mean with all the 17 pieces?

JUDGE MOLLISON: No, I said wholly by Exhibit 1. Do you use that, do you sell that?

THE WITNESS: This alone, no, sir.

JUDGE MOLLISON: What about Exhibits 3 and 4?

THE WITNESS: Same way. This is always made up with this mirror. This makes up the design. (R. 52.)

Chief Judge Oliver then propounded the following question:

It has no other use; you never used it for any other purpose?

THE WITNESS: No, sir.

The witness Langlotz testified that his company represented several large glass manufacturers, including Miroiterie Generale De Belgique, Brussels, from whom the present importation was purchased (R. 53). He testified that he was familiar with the various processes used in the manufacture of glass and was also familiar with the term "engraving," as applied to glass; that he had seen glass engraved many times and described the process (R. 54–56). This witness corroborated the testimony of Mr. Friedman to the effect that, in the process of engraving glass, the result is the same whether a copper or a carborundum wheel is used (R. 56–57).

Mr. Langlotz stated that he was familiar with the items represented by plaintiff's illustrative exhibits 1, 3, and 4 and had seen similar merchandise manufactured in Belgium (R. 57). The witness explained the process followed in beveling glass (R. 57–58). He described the decorations on illustrative exhibits 1, 3, and 4 as follows:

Exhibit 4 is a bevel. Exhibit 3, beveled and ponties and sort of a fancy, what we call a beaded bevel. Exhibit No. 1, there you have got the bevel and the ponties that aren't polished and you have got the flower design that's polished or not, I can't see it—no; they are not polished either. (R. 60.)

The witness further stated that all of the decorations described by him constituted engraving (R. 60). He then testified that his company always sold the items represented by plaintiff's illustrative exhibits 1, 3, and 4 in sets and that, while there might be a possibility of purchasing 1 or more pieces constituting the 17-piece set to replace broken pieces, he had never heard of that being done and that to the best of his knowledge the 17 pieces were always sold in sets.

The questions here presented for decision are: First, do the 17-piece plate-glass sets, as imported, constitute entireties? If so, are these sets decorated chiefly by engraving?

The question of what constitutes entireties has been passed on by this court and by our appellate court in a great many cases. In *Jackson Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 475, T. D. 32227, the merchandise consisted of certain cast-iron linings, designed and formed especially for the purpose of being used in fireplaces and on mantels. The Court of Customs Appeals, at page 477 therein, held as follows:

> The fact that these linings as imported are not assembled into the form of their ultimate use does not deprive them of their character of entireties, and neither does it require that the parts into which the entirety has been temporarily resolved should be considered for tariff purposes as separate entities. "Knocked down" or assembled, the castings, which were imported together, constituted mantel and fireplace linings, and for nothing else were they commercially fit or available.

The articles in question were held dutiable as entireties.

In the *Jackson* case, *supra*, the court, page 476, further said:

> * * * The merchandise itself bears witness that manufacturing processes and a definite purpose cooperated from beginning to completion to produce something more than chiseled, drilled, machined, or otherwise advanced castings and that the several pieces constituting the fireplace and mantel sets have been so designed, shaped, formed, and fitted together that they have lost their identity as castings and have become the parts of a consistent whole. In a word, they have been advanced beyond the point of castings out of which something may be made and have become definite articles with a definite name and with a specific use, which unfits them for any other commercial purpose than that of mantel and fireplace linings.

In the oft-quoted case of *Altman & Co.* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232, the merchandise consisted of certain corsets, each pair in a separate box, and each box marked with the number and size of the corset contained in it. Several boxes of corsets were enclosed in a larger case. In that case, in separate packages, were certain made-up lace trimmings, designed to be attached to the corsets bearing similar numbers. In holding the goods dutiable as entireties, the court, page 318, stated:

\* \* \* if an importer brings into the country, at the same time, certain parts, which are designed to form, when joined or attached together, a complete article of commerce, and when it is further shown that the importer intends to so use them, these parts will be considered for tariff purposes as entireties, even though they may be unattached or inclosed in separate packages, and even though said parts might have a commercial value and be salable separately.

In the case of *Mountain Copper Co.* v. *United States*, 40 Treas. Dec. 103, T. D. 38823, 28 castings, composed of Bessemer steel, together constituting one complete set for lining a stone-crushing machine manufactured in this country, were held to constitute an entirety for tariff purposes.

In the case of *Donalds Ltd., Inc.* v. *United States*, 32 Cust. Ct. 310, C. D. 1619, this court had under consideration certain merchandise, consisting of inhalers made up of cylindrical holders and impregnated fillers separately packed. In holding the separate items to constitute entireties, the court, at page 315, said:

The importation is something more than an inhalant enclosed in a container; it is a combination article particularly appropriate for applying as well as transporting the inhalant.

and stated the general law as follows:

\* \* \* If what is imported as a unit is actually and commercially two or more individual entities which, even though imported joined or assembled together, nevertheless, retain their individual identities and are not subordinated to the identity of the combination, duties will be imposed upon the individual entities in the combination as though they had been imported separately. Conversely, if there are imported in one importation separate entities, which by their nature are obviously intended to be used as a unit, or to be joined together by mere assembly, and in such use or joining the individual identities of the separate entities are subordinated to the identity of the combined entity, duty will be imposed upon the entity they represent.

In the case now under consideration, the evidence is clearly to the effect that each 17-piece set of plate-glass items was definitely designed and manufactured for a specific use, to wit, a mirror frame for a mirror of a definite design, size, and shape, and could not be used for any other purpose. The contention of the Government that the 17-piece sets cannot be considered as entireties, because they cannot be used alone but must be assembled as a frame on a mirror on a wooden background before they can be sold, is untenable, as held in the *Jackson Co.* and *Mountain Copper Co.* cases, *supra.* This question has already been decided against the Government's position.

As to the question of whether the merchandise now before us is decorated chiefly by engraving, the undisputed testimony is to the effect that the plate-glass sets were decorated by engraving when imported. Certainly, if beveling is to be considered as engraving,

the involved merchandise was decorated chiefly by engraving. Both the witnesses called by plaintiff testified unequivocally that beveling is done for decorating purposes and does constitute engraving.

The definitions taken from dictionaries and encyclopedias afford but little help in determining this question, since the definitions themselves call for further explanation. For example, Funk & Wagnalls New Standard Dictionary of the English Language, 1942 edition, defines "engraving" as:

> The act, process, or art of producing by cutting, on metal, stone, or wood, either incised or relief designs, as for ornamentation or printing.

Under the heading of "glass," the same dictionary defines "glass-cutting" as:

> The process of cutting, grinding, and polishing glassware in ornamental designs, known in the trade as cuts, which take their names from the forms represented * * *.

Under the heading of "glass-engraving," this same authority gives the following definition:

> The process of marking or decorating glass with designs, letters, etc.

The same dictionary defines "beveling" as:

> The act of making a bevel; a beveled surface or part: an element of some self-explaining compounds; * * *.

The definitions, therefore, seem broad enough for interpretation, and the only witnesses called in the case, both of whom had had wide experience in the glass business, unequivocally testified that beveling constitutes decorative engraving. However, some of the pieces in the set obviously are engraved and decorated under all the definitions, and, since the 17 pieces constitute an entirety, these decorations are engravings forming part of the entire frame of the mirror.

The plaintiff herein has not argued its alternative claim, and, in view of our disposition of the case, hereinafter indicated, we deem it unnecessary to discuss the alternative claim.

We are of opinion and hold that the 17-piece sets as imported constitute entireties. We further hold that the merchandise is decorated chiefly by engraving, and, since each set is conceded to be valued at not less than $8, the claim in this protest that the involved merchandise is properly dutiable under paragraph 218 (f) of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to The General Agreement on Tariffs and Trade, T. D. 52373, supplemented by Presidential proclamation, T. D. 52462, as glass articles "primarily designed for ornamental purposes, decorated chiefly by engraving, and valued at not less than $8 each," at the rate of 15 per centum ad valorem, is sustained. Judgment will issue accordingly.